UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JANET L. WISEMAN,

     Plaintiff,

v.                                                                Case No. 8:20-cv-2736-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

     Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB).  For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1960, has at least a high school education, and has past relevant work experience as a floor attendant.  (R. 59, 88, 1606).  In April 2014, the Plaintiff applied for DIB, alleging disability as of October 2012 due to anxiety, depression, severe back pain, and a cervical and lumbar spine impairment.  (R. 88–

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, replacing the former Commissioner, Andrew M. Saul.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

89).  The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration.  (R. 98, 111).

An Administrative Law Judge (ALJ) conducted a hearing on the matter in May 2016.  (R. 50–84, 127–28).  The Plaintiff was represented by counsel at that proceeding and testified on her own behalf.  (R. 50–78).  A vocational expert (VE) also testified. (R. 79–84).

In a decision issued in August 2016, the ALJ found that the Plaintiff was not disabled.  (R. 30–43).  After the Appeals Council denied the Plaintiff's subsequent request for review (R. 1–6), the Plaintiff brought a federal action challenging the SSA's adverse disability ruling, which resulted in the case being reversed and remanded in September 2018 (R. 1710–28).

On remand, a different ALJ held two hearings regarding the Plaintiff's application, the first in April 2019 and the second in November 2019.  (R. 1616–76). The Plaintiff was represented by an attorney at these proceedings and again testified on her own behalf.  *Id.*

In a decision issued in December 2019, the ALJ found that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in October 2012; (2) had the severe impairments of anxiety disorder, depressive disorder, migraine headaches, and degenerative disc disease of the cervical, thoracic, and lumbar spine; (3) did not, however, have an impairment or combination of impairments that met or

medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work with certain physical, mental, and environmental limitations; and (5) based on the VE's testimony, could engage in her past relevant work as a floor attendant. (R. 1594–1607). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 1607).

The Appeals Council denied the Plaintiff's request for review. (R. 1581–88). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

---

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

4

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence," even if it finds that the evidence preponderates against the Commissioner's determination. *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ did not properly consider certain medical opinions regarding her physical limitations; and (2) the ALJ did not correctly evaluate the Plaintiff's subjective complaints of pain and other

5

symptoms.  (Docs. 30, 35).  Upon careful review of the parties' submissions[5] and the

pertinent portions of the record, the Court finds the Plaintiff's challenges lack merit.

A.

As noted above, at step four of the sequential evaluation process, the ALJ must

determine the claimant's RFC and her ability to perform her past relevant work.  *See*

20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545.  To do so, an ALJ must assess "all medical

opinions in a claimant's case record, together with other relevant evidence."

*McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam)

(citing 20 C.F.R. § 404.1527(b)).  Medical opinions are statements from physicians or

other acceptable medical sources "'that reflect judgments about the nature and severity

of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and

prognosis, what [the claimant] can still do despite [her] impairment(s), and [the

claimant's] physical or mental restrictions.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d

1176, 1178–79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and

the reasons therefor.  *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir.

2011) (per curiam) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per

curiam)).  In rendering this assessment, an ALJ must take into account: (1) whether

the medical provider at issue examined the claimant; (2) the length, nature, and extent

of the provider's relationship with the claimant; (3) the medical evidence and

---

[5] The parties' submissions collectively consist of their joint memorandum (Doc. 30) and the Plaintiff's reply to same (Doc. 35).

explanation supporting the provider's opinion; (4) the degree to which the provider's opinion is consistent with the record as a whole; and (5) the provider's area of specialization.  20 C.F.R. § 404.1527(c).  While an ALJ is required to consider each of these factors, he is not obligated to address them explicitly in his decision.  *Lawton*, 431 F. App'x at 833.

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians.  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. §§ 404.1527(a)(2), (c)(1)–(2)).  Treating doctors' opinions are accorded the most deference because there is a greater likelihood that such providers will "be able to give a more complete picture of the [claimant's] health history."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (per curiam).  As a result, the ALJ must give a treating doctor's opinion substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam).  "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records."  *Schink*, 935 F.3d at 1259 (citations omitted).  If an ALJ elects to "disregard a treating physician's opinion, . . . he must clearly articulate [his] reasons for doing so," *Hargress*, 883 F.3d at 1305 (internal quotation marks and citation omitted), and those reasons must be buttressed by substantial evidence, *Phillips*, 357 F.3d at 1240.

7

Unlike a treating physician, the opinion of a non-treating, examining doctor "[is] not entitled to great weight." *Crawford*, 363 F.3d at 1160 (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam)).   And the opinion of a non-treating, non-examining physician is generally afforded the least deference.   *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (per curiam).   In the end, an ALJ "is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion."   *Id.* (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)); *accord Sharfarz*, 825 F.2d at 280 ("Of course, the ALJ may reject any medical opinion if the evidence supports a contrary finding.") (citation omitted).

In this case, pertinent to the Plaintiff's first challenge, the Plaintiff received treatment from multiple physicians who prepared opinions and issued findings regarding the Plaintiff's physical abilities.   The Court will address each of these providers in turn.

     1.    Dr. Melvin Grossman

The Plaintiff sought treatment from Dr. Grossman, a neurologist, in August 2012 and complained that she suffered from migraine headaches, along with chronic pain in her left arm, shoulder, neck, and lower back.  (R. 348).  Dr. Grossman reviewed an MRI of the Plaintiff's neck and confirmed that she had degenerative disc disease. *Id*.  Dr. Grossman saw the Plaintiff again in October 2012 after a slip-and-fall incident and advised her not to return to her job "until further notice."  (R. 346–47).  Dr. Grossman then prepared a letter stating that the Plaintiff was unable to work "[a]t the

present time." (R. 334). Dr. Grossman ceased treating the Plaintiff in January 2013. (R. 684–85).

Roughly two-and-a-half years later, in June 2015, Dr. Grossman completed a Spinal Impairment Questionnaire in which he offered a number of assessments about the Plaintiff's capacity to sit, stand, ambulate, lift and carry weight, and utilize her upper extremities. (R. 678–83). In particular, Dr. Grossman opined that the Plaintiff could sit for two hours, could stand/walk for less than one hour, needed to stand and move around for thirty minutes after sitting for the same time period, could lift/carry five pounds frequently and ten pounds occasionally, and did not have any restrictions with respect to reaching, handling, or fingering. *Id.* To buttress this assessment, Dr. Grossman cited the MRI studies of the Plaintiff's cervical and lumbar spine. *Id.* In a contemporaneous letter, Dr. Grossman added, *inter alia,* that the Plaintiff had been treated with "myriad" medications but continued to experience migraine headaches, cervical and lumbar pain, and an unsteady gait. (R. 684–85). Dr. Grossman also stated in his letter that the Plaintiff's prognosis for recovery was "nil" and that she would not be able to engage in full-time, competitive work. *Id.*

In his decision, the ALJ largely disregarded Dr. Grossman's opinion, noting that Dr. Grossman's conclusion about the Plaintiff's capacity to return to work was an issue reserved to the Commissioner and that Dr. Grossman did not identify a "significant amount of support" to bolster his findings. (R. 1603). As to the latter determination, the ALJ stated:

The [Plaintiff] was noted to have some difficulty with tandem gait testing [following a slip-and-fall incident], but it was described as only slight. The [Plaintiff]'s gait was also unsteady, but Dr. Grossman described this as only slight as well. Dr. Grossman also specifically indicated the [Plaintiff]'s gait was not ataxic. Dr. Grossman appears to have been basing his conclusions mostly on the [Plaintiff]'s subjective reports of being unable to work, so they were overall accorded little weight in determining the [Plaintiff]'s physical [RFC].

*Id.* (internal citations omitted).

2.    Dr. Nabil Gerges

In June 2013, the Plaintiff began receiving care for migraine headaches, neck pain, and back pain from Dr. Nabil Gerges, a pain management specialist.  (R. 373). Dr. Gerges's examination of the Plaintiff at the time showed that she had normal posture, 4/5 left grip strength, and 5/5 motor strength throughout all four extremities. (R. 374).  Dr. Gerges referred the Plaintiff for MRIs of her lumbar and cervical spine, which revealed, *inter alia*, a mild annular disc bulging at multiple levels, a moderate diffuse annular disc bulging, and a small right lateral disc protrusion at L4-5.  (R. 485–88).  Dr. Gerges also administered trigger point injections to the Plaintiff and prescribed her Hydrocodone-Acetaminophen and Norflex.  (R. 375).

In September 2013, Dr. Gerges completed a Workplace Voluntary Continuing Disability Claim Form, in which he reported treating the Plaintiff for paresthesia, spinal enthesopathy, facet syndrome, lumbar myofascial pain, and cervical myofascial pain.  (R. 351–54).  Citing the Plaintiff's right lateral disc herniation and cervical stenosis observed in the MRIs, Dr. Gerges opined, *inter alia*, that the Plaintiff had a

"class five" physical impairment, which he defined as a "[s]evere limitation of [the Plaintiff's] functional capacity" but one which rendered her "capable of [performing] minimum sedentary activity." (R. 352). Dr. Gerges additionally opined that the Plaintiff was "unable to sit, stand, walk[,] or lift for any period of time." (R. 353).

In his decision, the ALJ discounted Dr. Gerges's conclusions contained in the disability form, stating:

> [Dr. Gerges] somewhat inconsistently reported what some of the [Plaintiff]'s abilities were. For example, Dr. Gerges indicated the [Plaintiff] could occasionally (defined as [one to thirty-three percent] of the time in the form) lift and carry up to [ten] pounds, stand, walk, and sit, but then later stated in the form that she was "unable to sit, stand, walk, or lift for any period of time." Other limitations noted by Dr. Gerges within the form, like . . . kneeling, stooping, etc. [were] also inconsistent with Dr. Gerges['s] treatment records. Records document the MRI findings, treatment modalities, a shuffling, slow, and cautious gait, and some slightly reduced left grip strength, but still normal posture, and 5/5 strength in all other areas. Treatment also appears to have provided some improvement, because when the [Plaintiff] established with a new primary care provider in early 2014, she was noted to have a completely normal cervical spine and lumbar spine, normal motor strength, and not even any tenderness to palpation. Since the form Dr. Gerges completed is internally inconsistent and the [Plaintiff]'s treatment records are inconsistent with the limitations identified within it, it was given little weight.

(R. 1604) (internal citations omitted).

11

3.    Dr. Sunil Panchal

The Plaintiff began seeing Dr. Sunil Panchal, a pain management specialist at the National Institute of Pain (National Institute), in July 2014.[6]  (R. 601–02).  The Plaintiff informed Dr. Panchal at the time that she suffered from numbness in her fingers, lower back and neck pain with radiation to her thighs and knees bilaterally, and increased pain while sitting, standing, walking, and laying down.  *Id.*  Despite these complaints, Dr. Panchal found that the Plaintiff exhibited a normal gait, normal heel and toe standing, negative straight leg raise test results, and 5/5 strength in all extremities.  (R. 602).

Dr. Panchal later provided the Plaintiff with further treatment and, in January 2016, completed a Spinal Impairment Questionnaire akin to the one filled out by Dr. Grossman.  (R. 806).  Dr. Panchal opined in this form that the Plaintiff could sit for two hours total, could stand/walk for two hours total, had to move around for twenty minutes after sitting for two hours, and could frequently lift/carry twenty pounds.  (R. 808–09).  In support of these findings, Dr. Panchal referenced the Plaintiff's diagnoses of cervical and lumbar facet arthropathy, sacroiliitis, and cervical radiculopathy, as well as her diagnostic blocks and MRI studies.  (R. 806).  Dr. Panchal also noted, however, that the Plaintiff did not have any muscle weakness, muscle atrophy, trigger points, swelling, crepitus, or motor loss, and that her "current limitations" would require "reassess[ment]" after she received a prescribed spinal cord stimulator (SCS)

---

[6] The Plaintiff first sought treatment at the National Institute in June 2014 for neck and lower back pain, along with numbness and tingling in her upper extremities.  (R. 516).

implant.  (R. 807, 811).  The Plaintiff underwent the SCS implant trial in December 2015 and stated that she felt 70–80% relief from her pain.  (R. 832).

The ALJ reviewed Dr. Panchal's determinations in his decision and accorded them "little weight" on the grounds that some of the restrictions Dr. Panchal "identified [were] inconsistent with objective physical examination findings."  (R. 1604).  Specifically, the ALJ observed that the "significant sitting, standing, and walking limitations" Dr. Panchal imposed did not conform to "the examination findings involving the [Plaintiff's] gait and strength."  *Id.*

4.    Dr. Syed Zaffer

In October 2017, more than twenty months after Dr. Panchal completed his Spinal Impairment Questionnaire, the Plaintiff established care with Dr. Syed Zaffer for neck and lower back pain.  (R. 2033).  Dr. Zaffer diagnosed the Plaintiff with cervicalgia, a lumbar strain, cervical facet syndrome, cervico-scapular myofascial pain, and a history of sacroiliac dysfunction.  (R. 2036).  Dr. Zaffer also prescribed the Plaintiff Gabapentin, Tramadol, and Mobic.  *Id*.  Dr. Zaffer's examination of the Plaintiff demonstrated that she had normal ambulation, a normal range of motion in her shoulders and lumbar spine/hip, the ability to walk on her toes and heels, and 5/5 motor strength.  (R. 2034–36).

The Plaintiff continued to see Dr. Zaffer regularly at his office through February 2019, and his treatment notes during this period reflect that the Plaintiff experienced no significant changes.  (R. 2009, 2013, 2017, 2021, 2025, 2029).  In fact, the Plaintiff

reported an increase in her level of functioning throughout 2018.  (R. 2013, 2017, 2025, 2029).

In April 2019, Dr. Zaffer prepared a Pain Assessment, in which he explained that he had seen the Plaintiff every two to three months since October 2017 and that she suffered from myofascial pain, cervical facet syndrome, cervical degenerative disc disease, a history of sacroiliac joint dysfunction, and a lumbar strain with pain and stiffness.  (R. 1971–77).  Based upon his "office notes" (R. 1971), Dr. Zaffer opined, *inter alia*, that the Plaintiff could sit for four hours total and stand/walk four hours total during an eight-hour workday; needed to move around after sitting for forty-five to sixty minutes but could return to a seated position after three to five minutes; and could occasionally use her arms/hands for grasping, turning, reaching, and twisting objects (R. 1975–76).  Dr. Zaffer further opined that the Plaintiff's pain, fatigue, and other symptoms were occasionally severe enough to interfere with her attention and concentration.  (R. 1976).

In his decision, the ALJ attributed partial weight to some of Dr. Zaffer's assessments and no weight to other of his determinations.  The ALJ reasoned:

> Dr. Zaffer's treatment records document tenderness in some areas, as well as the [Plaintiff's] longstanding history of chronic pain and sacroiliac joint dysfunction.  These findings are consistent with a limited range of light exertional activity.  However, there is no evidence of any significantly abnormal findings to support limitations in grasping, standing, and walking, for example.  Dr. Zaffer had noted the [Plaintiff's] normal ambulation and 5/5 strength, inconsistent with any significant standing or walking limitations.  There is similarly no evidence of any significantly reduced grip strength, which would support grasping

14

limitations.   The questionnaire completed by Dr. Zaffer is overall generally consistent with Dr. Zaffer's treatment records and those of the [Plaintiff's] other providers[,] so it was accorded some weight.   The limitations with no correlating objective support were not given any weight, however, and not reflected in the determined [RFC].

(R. 1604–05).

5.    Dr. Brian Higdon

In April 2019, the Plaintiff was evaluated by Dr. Brian Higdon, a consultative examiner.  (R. 1981–84).  The Plaintiff advised during her visit with Dr. Higdon that she was employed and working as a cashier.  (R. 1981).[7]  Dr. Higdon's evaluation of the Plaintiff revealed that she had a symmetric, steady gait; no palpable muscle spasm; 5/5 muscle strength in all tested areas; a negative straight leg raise test; and no joint swelling, erythema, effusion, tenderness, or deformity on musculoskeletal examination.  (R. 1983).  Although diagnosing the Plaintiff with back pain, Dr. Higdon concluded, *inter alia*, that she could perform fine motor skills; squat and rise from a squatting position with ease; rise from a sitting position without assistance; walk on her heels and toes; and stand and hop on one foot bilaterally.  (R. 1984).  Dr. Higdon additionally found that the Plaintiff was able to sit for six hours total, stand for four hours total, and walk for four hours total in an eight-hour workday.  (R. 1986).

In his decision, the ALJ found Dr. Higdon's opinion to be persuasive, stating, in part:

---

[7] The Plaintiff's representation about her employment coheres with the record evidence, which indicates she worked as a cashier from November 2017 to May 2019.  (R. 1951, 1954–55, 1957, 2042).

> With the exception of limitations involving sitting, standing, and walking, Dr. Higdon's opinion is generally consistent with the consultative examination report and the [Plaintiff]'s treatment records, and it was accordingly given significant weight. The undersigned is aware that Dr. Higdon's opinion is inconsistent with those of Drs. Gerges, Grossman, and Panchal as the [Plaintiff] noted. . . . However, as discussed above, the opinions of these providers are somewhat inconsistent with their own treatment records and with the evidence of record as a whole. The [Plaintiff]'s providers may have enjoyed a superior vantage point from which to assess the limiting effects of her impairments, but their opinions about those limitations appear to be too heavily influenced by subjective reports from the [Plaintiff] of being unable to work or perform certain activities. The undersigned is also aware of Dr. Higdon's somewhat limited review of the [Plaintiff]'s file. While Dr. Higdon did not have an opportunity to review the fully developed [forty-five]-exhibit file, the undersigned did. The [Plaintiff] has a significant and longstanding treatment history, some prominent MRI findings, her sister and friend have provided statements, and she has provided testimony at two hearings. The undersigned has reviewed the evidence of record and finds that Dr. Higdon's opinion is generally consistent with the evidence of record as a whole.

(R. 1605).

### 6.    Dr. Efren Baltazar

Along with the above providers, the ALJ discussed in his decision the assessments rendered by a state agency medical consultant, Dr. Efran Baltazar, who examined the Plaintiff's claim file in September 2014 and opined that the Plaintiff could engage in light exertional activity with no more than occasional performance of postural functions. (R. 107–08). While affording "great weight" to Dr. Baltazar's determinations, the ALJ concluded that the Plaintiff required more restrictions than Dr. Baltazar found. (R. 1603). The ALJ explained:

16

Dr. Baltazar reviewed the [Plaintiff]'s file in 2014 and [the] slightly reduced range of light work [he assessed] is consistent with the [Plaintiff]'s history of treatment with Drs[.] Grossman and Gerges. These physicians identified some abnormalities via imaging and physical examinations, but nothing like an inability to ambulate independently, which would suggest the [Plaintiff] could not perform a reduced range of light work. The undersigned finds the [Plaintiff] to be more limited than Dr. Baltazar opined, given her subsequent treatment records and a subsequent consultative examination.

*Id.*

The Plaintiff now raises a multitude of arguments in support of her challenge to the ALJ's analysis of this medical opinion evidence. Her first contention is that the ALJ erred in dismissing certain of these assessments as "reserved to the Commissioner." (Doc. 30 at 37). Although somewhat unclear, this contention appears to refer to the ALJ's rejection of Dr. Grossman's findings in October 2012 that the Plaintiff was not able to return to her job (R. 334, 347) and Dr. Grossman's statement in June 2015 that she was unable to engage in "full-time job, competitive work" (R. 685).[8] This argument fails.

It is well settled that an ALJ need not consider a provider's assessment that a claimant is disabled, as such matters are reserved to the Commissioner. 20 C.F.R. § 404.1527(d) (defining "opinions that [a claimant is] disabled" as something other than a "medical opinion"); *Williams v. Acting Comm'r of Soc. Sec.*, 649 F. App'x 1000,

---

[8] In connection with this argument, the Plaintiff also includes citations to the opinions of Dr. Gerges, Dr. Panchal, and Dr. Zaffer, as well as to Dr. Grossman's Spinal Impairment Questionnaire. (Doc. 30 at 38). The ALJ did not discount these opinions on the basis that the issues therein were reserved to the Commissioner.

1002 (11th Cir. 2016) (per curiam) (finding a treating physician's opinion that a claimant was "fully disabled" was not a medical opinion but rather a conclusory legal judgment on issues reserved to the Commissioner); *Campbell v. Comm'r of Soc. Sec.*, 2019 WL 2865533, at *5 (M.D. Fla. July 3, 2019) (declining to credit an opinion that the claimant was "unable to work" since it addressed an issue reserved to Commissioner); *Gregory v. Comm'r of Soc. Sec.*, 2017 WL 4325397, at *9 (M.D. Fla. Sept. 29, 2017) (disregarding an opinion that the claimant was "totally disabled" because it pertained to an issue reserved to the Commissioner).

Apparently recognizing as much, the Plaintiff counters that a physician's determination that a claimant is "unable to work" or "disabled" does not "provide an independent reason for rejecting valid medical opinions on the nature and severity of a claimant's impairments." (Doc. 30 at 38). The problem with this line of argument is that it does not fairly account for the whole of the ALJ's evaluation of Dr. Grossman's opinion. While the ALJ specifically dismissed Dr. Grossman's finding that the Plaintiff could not return to work as an issue "reserved to the Commissioner" (R. 1603), the ALJ then proceeded to analyze other parts of Dr. Grossman's assessments and deemed them to be insufficiently substantiated by the record, *id*.

The Plaintiff next argues that the ALJ improperly discounted the opinions of Drs. Grossman, Gerges, Panchal, and Zaffer on the grounds that those opinions were predicated on the Plaintiff's alleged symptoms. (Doc. 30 at 39). This contention seems to be based on the ALJ's observation made in the context of his consideration of Dr. Higdon's opinion that Drs. Grossman, Gerges, and Panchal's determinations

18

"appear[ed] to be *too heavily* influenced by [the Plaintiff's] subjective reports . . . of being unable to work or perform certain activities." (R. 1605) (emphasis added).  This argument is flawed because it wrongly suggests that the ALJ mistakenly found these providers to have rested their assessments *entirely* on the Plaintiff's complaints.  The ALJ did not.

To illustrate this point, recall that the ALJ's justification for discounting Dr. Grossman's opinions was that Dr. Grossman "appear[ed] to have . . . base[d] his conclusions *mostly* on the [Plaintiff's] subjective reports of being unable to work" *and* that he "did not provide a significant amount of support in connection with his conclusions." (R. 1603) (emphasis added)).  Furthermore, with respect to the latter rationale, the ALJ stated that Dr. Grossman's records revealed the Plaintiff experienced only a "slight" difficulty with tandem gait testing and only a "slight" unsteadiness in her gait.  *Id.*  Thus, contrary to the Plaintiff's assertion, the ALJ did not base his evaluation of Dr. Grossman's opinion solely on the Plaintiff's symptoms. *See Crawford*, 363 F.3d at 1159 (finding an ALJ's decision to discount a treating physician's medical opinion to be supported by substantial evidence in part because the opinion "appear[ed] to be based primarily on [the claimant's] subjective complaints of pain").

Turning to the ALJ's weighing of Dr. Gerges's opinion, as discussed previously, the ALJ found that Dr. Gerges provided conflicting assessments regarding some of the Plaintiff's abilities.  (R. 1604).  This too finds adequate support in the record.  Dr. Gerges noted in his "Workplace Voluntary Continuing Disability Claim Form-

19

Physician Statement," for example, that (1) the Plaintiff could occasionally lift and carry up to ten pounds, as well as stand, walk, and sit; *and* (2) the Plaintiff was "unable to sit, stand, walk, or lift for *any* period of time." (R. 353, 1604) (emphasis added). In addition, as the ALJ also observed, Dr. Gerges's treatment notes indicated that the Plaintiff's posture was normal and that her strength in *all* areas except her left grip was 5/5. (R. 1604).

Moreover, the ALJ remarked that Dr. Gerges's opinion did not comport with other providers' records, which evidenced that the Plaintiff had "a completely normal cervical spine and lumbar spine, normal motor strength, and not even any tenderness to palpation." *Id.* The ALJ properly concluded that such discrepancies between Dr. Gerges's opinion, his own materials, and the documentation compiled by other physicians warranted affording less credence to Dr. Gerges's findings. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."); *id.* § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give that medical opinion."). The fact that—as the Plaintiff claims—Dr. Gerges additionally cited lumbar and cervical MRI findings to bolster his determinations (R. 352) does not overcome the ALJ's analysis in this regard, as the Court cannot re-weigh the evidence at this juncture. *See Carter*, 726 F. App'x at 739; *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).

With respect to Dr. Panchal, although it is true—as the Plaintiff points out—that Dr. Panchal referenced diagnostic blocks and MRI studies to buttress his findings (R. 806–07), the ALJ concluded that the limitations Dr. Panchal identified did not comport with the objective physical examination findings, which demonstrated the Plaintiff had a normal gait, normal heel and toe standing, 5/5 strength, and a negative straight leg raising test (R. 1604). The ALJ also observed that the abnormalities Dr. Panchal documented at his initial visit with the Plaintiff—such as low back and neck pain—"quickly improved" as reflected in later treatment records. *Id.* The ALJ commented as well that Dr. Panchal described in his Spinal Impairment Questionnaire that the Plaintiff complained of a painful range of motion, tenderness, and a nonspecific pattern of bilateral upper extremity sensory loss, but that the Plaintiff also did not display an abnormal gait, muscle atrophy, muscle weakness, motor loss, trigger points, swelling, or crepitus. (R. 807, 1604). Accordingly, there is sufficient support for the ALJ's determination that the restrictions Dr. Panchal recommended—"[n]amely, significant sitting, standing, and walking limitations"—were inconsistent with the examination findings related to the Plaintiff's "gait and strength." (R. 1604).

Finally, relative to Dr. Zaffer, the Plaintiff asserts that instead of simply accepting the Plaintiff's reported symptoms, Dr. Zaffer rested his opinion on the "clinical exam findings in his treatment records." (Doc. 30 at 40) (citing R. 1971). This claim seems to pertain to Dr. Zaffer's reference in a Pain Assessment form he completed that the clinical and laboratory assessments buttressing his diagnoses included the "office notes provided." (R. 1971).

21

Putting aside that it is unclear upon what records Dr. Zaffer based his opinions, the ALJ concluded that there was no evidence to bolster Dr. Zaffer's restrictions relative to the Plaintiff's "grasping, standing, and walking" or her "significantly reduced grip strength." (R. 1605).  In fact, as the ALJ accurately observed, Dr. Zaffer himself found that the Plaintiff demonstrated "normal ambulation and 5/5 strength." *Id.*

The Plaintiff next argues that the MRIs of her back and neck "consistently document[ed] extensive degenerative and disc abnormalities of [her] cervical, thoracic, and lumbar spine," and that "examinations confirm the clinical abnormalities identified by the treating sources." (Doc. 30 at 40).  This contention is unpersuasive. As explained above, while there may be items in the record that bolster the opinions rendered by the aforementioned providers, it is not the function of the Court to re-weigh the evidence on appeal.  *Carter*, 726 F. App'x at 739; *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

The Plaintiff next argues that the ALJ incorrectly "substituted his [own] lay judgment" for the opinions offered by the treating physicians.  (Doc. 30 at 40); *see also* (Doc. 35 at 2–4).  This contention fails as well.

Unlike the situation portrayed by the Plaintiff where an ALJ "play[s] doctor" and takes it upon himself to analyze medical evidence beyond his ken, *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (per curiam), the ALJ here simply performed his duty of evaluating the pertinent information in the record and resolving the discrepancies he discerned. *See* 20 C.F.R. §§ 404.1520b, 404.1527, 404.1545. As discussed earlier, the ALJ did so by pointing out various conflicts between the providers' reports and both their own materials and those of other medical professionals. Notably, the Plaintiff fails to identify any specific finding that demonstrates the ALJ substituted his own opinion for that of one of the treating physicians. In short, there is no indication that the ALJ "played doctor" in this case.

The Plaintiff next argues that the ALJ should have afforded greater weight to the assessments of the treating physicians than he did to the opinion of the consultative examiner, Dr. Higdon. (Doc. 30 at 42). As referenced previously, however, the ALJ made clear throughout his ruling that the findings of Drs. Gerges, Grossman, Panchal, and Zaffer did not cohere with their own treatment notes and the record evidence as a whole, and that these providers—at least Dr. Grossman anyway—also seemingly placed too great an emphasis on the Plaintiff's subjective complaints regarding her inability to work or engage in certain activities. (R. 1603–05). The Plaintiff does not meaningfully confront the bulk of this rationale provided by the ALJ.

The Plaintiff next argues that the ALJ erred by not setting forth his reasons for assigning significant weight to Dr. Higdon's opinion that the Plaintiff could sit for only two hours at a time, could stand/walk for only one hour at a time, and could not

stand/walk more than a total of four hours in an eight-hour workday. (Doc. 30 at 41); *see also* (R. 1986). The Plaintiff asserts that these restrictions would limit her to merely sedentary work, yet the ALJ concluded she could perform light work without articulating those aspects of Dr. Higdon's report he accepted and those he rejected in arriving at his finding. (Doc. 30 at 41–42). This argument is unavailing.

As an initial matter, Dr. Higdon's opinion does not—as the Plaintiff asserts— reflect that she could perform nothing more than sedentary work. That type of work requires "periods of standing or walking [that] should generally total no more than about [*two*] hours of an [eight]-hour workday." Soc. Sec. Rep. 83-10, 1983 WL 31251 (S.S.A. 1983) (emphasis added). Dr. Higdon, by contrast, found that the Plaintiff should not stand or walk longer than a total of *four* hours in an eight-hour workday. (R. 1986). As a result, the ALJ properly found Dr. Higdon recommended that the Plaintiff be confined to what "essentially [would be] a restricted range of light work activity." (R. 1605).

Aside from this threshold deficiency in the Plaintiff's argument, the ALJ did in fact describe the reasons which led him largely to accept Dr. Higdon's opinion. As noted above, on the positive side of the ledger, the ALJ stated that he deemed Dr. Higdon's assessments to be persuasive because they were "generally consistent with the consultative examination report and the [Plaintiff]'s treatment records." *Id.* On the negative side of the ledger, the ALJ also explained that he did not fully adopt Dr. Higdon's determinations because, although they conformed "for the most part" to the physical examination results, the "normal findings involving the [Plaintiff's] gait and

24

strength [were] actually somewhat inconsistent with the suggestion that she [could] sit, stand, and walk for limited amounts of time." *Id.* In light of this explanation, the Plaintiff fails to show that the ALJ did not sufficiently articulate his rationale for viewing Dr. Higdon's opinion as favorably as he did or that substantial evidence does not support the ALJ's assessment.

Relatedly, the Plaintiff next argues that the ALJ placed too much credence in Dr. Higdon's findings even though Dr. Higdon did not review the Plaintiff's treatment records or any of the images of the Plaintiff's spine. (Doc. 30 at 42). According to the Plaintiff, this error violated 20 C.F.R. § 404.1517, which provides that the SSA "will . . . give the examiner any necessary background information about your condition." *Id.* § 404.1517.

The problem with this contention is that the Eleventh Circuit has stated an ALJ need only provide a consultative examiner with the "background information necessary to conduct the RFC exam for which he was consulted . . . which focuses on the applicant's *current* physical capabilities, rather than an applicant's history of impairments." *Reeves v. Soc. Sec. Comm'r*, 794 F. App'x 851, 857 (11th Cir. 2019) (per curiam). Further, the ALJ expressly accounted for the fact that Dr. Higdon's examination of the Plaintiff's materials was "somewhat limited," noting that "[w]hile Dr. Higdon did not have an opportunity to review the fully developed [forty-five-exhibit] file, the [ALJ] did." (R. 1605).

The Plaintiff further argues that the ALJ erred in attributing "great weight" to the assessments of the state agency medical consultant, Dr. Baltazar, who found the

25

Plaintiff could engage in light work.  (Doc. 30 at 43).  The Plaintiff correctly points out that the Regulations "generally" require an ALJ to afford more deference to the opinions of treating sources, 20 C.F.R. § 404.1527(c), and that "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence," *Schink*, 935 F.3d at 1260.  The Plaintiff's argument does not survive scrutiny.

The reason the ALJ deemed Dr. Baltazar's opinion to be persuasive is because it was consistent with the care the Plaintiff received from two of her treating providers, Drs. Grossman and Gerges.  (R. 1603).  The Plaintiff does not show that the ALJ lacked good cause to do so.  *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) ("[The plaintiff] contends that the ALJ erred by crediting the reports of non-examining, non-treating physicians.  It is not improper, however, for an ALJ to consider such reports—as long as the opinion of the treating physician is accorded proper weight.  And, as we stated before, the Secretary in this case stated 'good cause' for not according [the plaintiff's] treating physician's opinion the 'substantial weight' normally required.  Thus, the Secretary did not err."); *see also Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (finding substantial evidence supported the ALJ's conclusion that there was good cause to afford more weight to a non-examining physician than two treating physicians in part because those treating physicians did not conduct a proper exam, relied too much on the claimant's subjective reports, and propounded "materially inconsistent" observations of the claimant).

The Plaintiff's reliance on *Brightmon v. Social Security Administration*, 743 F. App'x 347 (11th Cir. 2018) (per curiam) in this regard is without merit. (Doc. 30 at 44). In *Brightmon*, the court held that the ALJ erred in assigning great weight to a state agency consultant's opinion which was rendered before the medical record became "much more developed." 743 F. App'x at 352–53. And because the ALJ's RFC assessment in that case "mirrored" the consultant's opinion, it was "difficult [for the court] to say that the ALJ properly '[took] into account and evaluate[d] the record as a whole.'" *Id.* at 353 (quoting *McCruter v. Brown*, 791 F.2d 1544, 1548 (11th Cir. 1986)).

Here, unlike in *Brightmon*, the ALJ found the Plaintiff to be more limited than Dr. Baltazar opined, insofar as the ALJ determined the Plaintiff could only engage in a reduced range of light work. (R. 1603). In addition, the ALJ made clear he considered the medical materials that post-dated Dr. Baltazar's assessment, along with the later consultative examination. *Id.*[9]

The Plaintiff lastly argues in conclusory fashion that the ALJ should have given controlling weight to the opinion of Dr. Ali Zahrai, who the Plaintiff refers to as a treating specialist. (Doc. 30 at 45). It appears that Dr. Zahrai—an orthopaedic surgeon—examined the Plaintiff on one occasion at Dr. Panchal's request. (R. 843–45). For the reasons explained by the Commissioner, the opinion of a one-time

---

[9] The Plaintiff notes that the federal district court which reviewed the prior ALJ's opinion questioned the ALJ's reliance on Dr. Baltazar's opinion given Dr. Baltazar's limited review of the record. (Doc. 30 at 44–45) (citing R. 1725). The prior ALJ, however, seems to have stated only that she assigned Dr. Baltazar's opinion great weight based upon "the discussions in [the ALJ's] decision." (R. 42). The ALJ's analysis here is much more substantial and explicitly accounts for the later treatment records in evaluating Dr. Baltazar's recommendations.

examiner like Dr. Zahrai is not entitled to any deference, *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987), and the Plaintiff fails to specify any medical opinion of Dr. Zahrai that conflicts with the ALJ's RFC determination.

In sum, the ALJ adequately explained his assessment of the opinions of the Plaintiff's relevant treating physicians and those assessments are supported by substantial evidence. *Hargress*, 883 F.3d at 1305–06. Again, although there may be information in the record suggesting the propriety of a more limited RFC for the Plaintiff, it is not the function of the Court to re-weigh the evidence on appeal. *Carter*, 726 F. App'x at 739 (stating that a court "may not decide the facts anew" or "re-weigh the evidence"); *Sims*, 706 F. App'x at 604 (explaining that the substantial evidence standard of review requires a claimant to do more than identify record evidence that buttresses her position; "she must show the absence of substantial evidence supporting the ALJ's conclusion"); *Miles*, 84 F.3d at 1400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.") (citations omitted); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that when the Commissioner's decision is supported by substantial evidence, a court must affirm it even if the court would have reached a contrary result) (internal quotation marks and citation omitted). Rather, the Court's obligation is confined to analyzing whether the ALJ relied on substantial evidence and applied the proper legal standards. *Miles*, 84 F.3d at 1400. By the Court's review, the ALJ has done so here.

B.

The Plaintiff's second challenge—that the ALJ failed to properly evaluate her subjective complaints (Doc. 30 at 64–68)—is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard, a claimant must show "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'"  *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict her capacity to work.  20 C.F.R. § 404.1529.  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms.  *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial

29

evidence."[10]   *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not cite particular phrases or formulations" in making this assessment, so long as the reviewing court can be satisfied that the ALJ "considered [the claimant's] medical condition as a whole."  *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (explaining that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

In his decision, the ALJ explicitly acknowledged the Plaintiff's "history of chronic pain and migraine headache[s]," as well as her reports of "some left-sided" pain, including pain in her left arm, shoulder, and ulnar nerve.  (R. 1600).  Further, in evaluating the Plaintiff's subjective complaints, the ALJ referenced the Eleventh Circuit's pain standard and his duty to account for "all [the Plaintiff's] symptoms and

---

[10] On March 16, 2016, Social Security Ruling (SSR) 16-3p superseded SSR 96-7p.  *See* SSR 16-3p, 2016 WL 1119029, at *1 (S.S.A. Mar. 16, 2016).  SSR 16-3p eliminates the use of the term "credibility" and clarifies that "subjective symptom evaluation is not an examination of an individual's character."  *Id.*  This change in terminology does not alter the Court's analysis.  *See Yangle v. Comm'r of Soc. Sec.*, 2020 WL 1329989, at *4 n.2 (M.D. Fla. Mar. 23, 2020); *Waters v. Berryhill*, 2017 WL 694243, at *6 n.4 (S.D. Ga. Jan. 30, 2017), *report and recommendation adopted*, 2017 WL 693275 (S.D. Ga. Feb. 21, 2017).

the extent to which th[o]se symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence" based upon the applicable legal requirements. *Id.* (citing 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029). The ALJ also rendered the following express credibility determination regarding the Plaintiff's subjective complaints:

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record.

(R. 1602).

As a result of his evaluation, the ALJ found the Plaintiff's subjective complaints "to be only partially supported" by the information before him. *Id.* To buttress this determination, the ALJ noted, *inter alia*, that the Plaintiff had been working part-time in a retail store as a cashier and "continue[d] to do so without incident." (R. 1603). The ALJ also observed that the Plaintiff's claims relative to her physical limitations similarly did not comport with her treatment records, stating:

> Examination findings of Drs. Grossman and Gerges did include some increased abnormalities for a time (*e.g.*, antalgic, slightly unsteady gait), but still included normal extremity strength. While the [Plaintiff] has alleged medication side effects as affecting her ability to work, her treatment records have documented her reports of experiencing *no* side effects. From 2014 on, examination findings have included a normal gait, normal strength, and recently, full range of motion. Some of the

> [Plaintiff]'s allegations are found to be consistent with the other evidence of record and her residual functional capacity was adjusted accordingly.

*Id.* (internal citations omitted).

Following his subsequent analysis of the opinions of the providers discussed above, the ALJ concluded, in pertinent part:

> After careful consideration of the above opinions, the [Plaintiff's] treatment records, the report of Dr. Higdon, the [Plaintiff's] subjective reports, and [certain other evidence], the undersigned finds [the Plaintiff] to be significantly limited in the ability to perform . . . physical . . . work activities. The [Plaintiff's] chronic musculoskeletal pain, tenderness, potential for unsteadiness, and decreased sensation restrict her to no more than light work activity with no climbing of ladders, balancing, or crawling, and no more than occasional climbing of ramps and stairs, stooping, kneeling, and crouching. The [Plaintiff] can no more than frequently reach overhead due to her neck pain and decreased sensation in her upper extremities. . . . The [Plaintiff] can no more than frequently be exposed to humidity, irritants, extreme temperatures, and excessive vibration due to her headaches, and to avoid exacerbations of her symptoms. In sum, the [undersigned's RFC] assessment is supported by the objective findings contained in the record, in part by the opinions of . . . medical consultant Dr. Baltazar, treating provider Dr. Zaffer, and consultative examiner Dr. Higdon, and in part by the [Plaintiff's] subjective reports. . . .

(R. 1606). Upon careful review, the Court concludes that the ALJ's clearly articulated credibility finding regarding the Plaintiff's subjective complaints is substantially supported by the record.

In an effort to avoid this conclusion, the Plaintiff now offers several arguments, the first of which is that the ALJ did not properly weigh the "extensive" testimony that purportedly bolsters a finding of disability. (Doc. 30 at 66). As this argument is

32

premised upon the contentions made and rejected by the Court in connection with the Plaintiff's first challenge, the Court need not re-examine those contentions here.

The Plaintiff next suggests that the ALJ should have deemed her reported symptoms to be more credible than he did because she actively sought to treat her pain through strong narcotics, spinal injections, and multiple radio frequency ablations. *Id.* The problem with this contention is that it essentially asks the Court to re-weigh the evidence in question and to disturb the ALJ's clearly articulated and adequately supported credibility finding. This the Court cannot do. *Carter*, 726 F. App'x at 739; *Foote*, 67 F.3d at 1562; *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We have held that credibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence[.]") (internal citations omitted).

The Plaintiff further argues that her ability to perform part-time work did not compel a conclusion that she could engage in a full-time job. (Doc. 30 at 67). This contention is flawed in two respects. First, contrary to the Plaintiff's assertion, an ALJ may consider a claimant's activities—including any part-time employment—in assessing the claimant's disability claim. 20 C.F.R. § 404.1529(c)(3)(i); *Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838 (11th Cir. 2020) (holding that the ALJ's finding the claimant was capable of performing some work was buttressed by more than a scintilla of evidence given the discrepancies in the record, including her ability to work part time as an assistant manager, "which was inconsistent with the extent of the disability that she claimed"); *Spivey-Adams v. Acting Comm'r of Soc. Sec.*, 2017 WL

33

4297246, at *11 (M.D. Fla. Sept. 28, 2017) (deeming the claimant's activities, including part-time work as a server, as an indication of a greater level of functioning than her doctors found); *Cheney v. Astrue*, 2011 WL 845781, at *6 (M.D. Fla. Mar. 8, 2011) (determining that since the claimant was "on call" and working part-time during the week, the ALJ properly considered her ability to work as a daily activity inconsistent with the alleged disability). Second, the ALJ did not predicate his determination solely on the Plaintiff's part-time work but relied on other record evidence as well, including the findings of Drs. Grossman, Gerges, Zaffer, Higdon, and Baltazar, as well as the records reflecting the Plaintiff's normal gait, normal strength, and full range of motion. (R. 1603, 1606).

Finally, the Plaintiff contends she had an "honorable work history," which she claims shows that she is not exaggerating her symptoms and wishes to work. (Doc. 30 at 68). As the government points out, *id.* at 71, however, courts in this Circuit have routinely rejected this type of argument. *See, e.g.*, *Edwards*, 937 F.2d at 584 (rejecting the claimant's assertion that "the ALJ should have accepted her testimony about her pain because she had a good work history"); *Smith v. Comm'r of Soc. Sec.*, 2018 WL 1940697, at *3 (M.D. Fla. Apr. 25, 2018) (rejecting the claimant's assertion that the ALJ did not meaningfully address, *inter alia*, her "excellent work history" in evaluating her testimony).

The Plaintiff's attendant claim that the ALJ erred by "hypocritically" considering her work history in a way that undermined her disability claim but not in a way that enhanced it fares no better. (Doc. 30 at 68). This is because such a claim

34

essentially requests the Court to re-weigh the evidence and to disturb the ALJ's clearly articulated and adequately supported credibility finding.  *Carter,* 726 F. App'x at 739; *Foote*, 67 F.3d at 1562.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 15th day of February 2023.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

35